Next case is United States v. Ward. Mr. Goldberger, good morning. Good morning, Your Honor. May it please the Court, my name is Peter Goldberger. It's my privilege to represent the appellant, Mr. Ward, who was the defendant below, and the appellant here, of course. And I reserve two minutes for rebuttal. Yes. This is an appeal from a sentence imposed after a previous remand. Of course, Judge Jordan and Judge Sirica happened to sit on that previous panel. So I'm a little ahead of myself, happily, in getting started. In our brief, we raised more issues, seven in all, than I usually do. But that is only because there was so much wrong with the proceedings below. And I stand ready to address any of those issues, but obviously seven issues are not suitable for a 15-minute oral argument. My thought was to focus on those which are less fact-intensive, more legal issues, more likely to be potentially precedential, and not only important to Mr. Ward, but also to other cases. I think the question about allocution is the one that I find primarily interesting. Well, it's certainly hot on my list. I know. I do as well. And I think the presumption, or the lack of a presumption of indictiveness, I'd like to hear on that. Those are the two issues that I had focused on. I'm glad I figured that out. Let me talk about the vindictiveness first, if I may, if you don't mind, Judge Ross. Not a bit. I flagged this issue because it's a resentencing. In my sentencing memorandum, I reminded the judge that there is this principle involved. I didn't expect an increase, but just to call it to everyone's attention. But then at the resentencing, as you know, the court increased by 150% the amount of the fine and gave no new reason, no reason for the increase. When you say you gave no new reason, is that a fair statement, Mr. Goldberger? Because there is this exchange between the AUSA and the sentencing judge where the assistant U.S. attorney indicates there's going to perhaps be an increase in the fine based on new information, and the judge says absolutely, and that AUSA had presented new information about your client's continued efforts, wrongful efforts, blatantly wrongful efforts, to be in touch with the victims of this crime. Why isn't that new information, which the district judge acknowledged by saying absolutely in response to the AUSA, as a basis for an increased penalty in the form of an increased fine? Once I objected, the U.S. attorney stood up and tried to clarify the record and invited the judge to give an explanation that would satisfy the legal standard and point it to the new information that you alerted Judge Shorten, but that's not the basis on which Judge Tucker then justified the sentence. She did use the word absolutely, but I don't think it's at all clear that she meant absolutely, I agree with everything you just said. What she said was absolutely, this is in no way to punish him for appealing, which is a reassurance but not a reason, and then this is based on the pre-sentence report and the information about his ability to pay. She stated, Judge Tucker stated, two specific reasons that in her mind justified the fine being at the $250,000 level, each of which was the same information that was before the court at the first sentencing. Don't we have to look at her response in totality though? I mean, you'd have us read absolutely out of it or give it the least meaning in favor of the government, but don't we have to actually indulge the opposite presumption that when she said absolutely, if it can be read as meaning, yes, I'm including in this partly the new information, that that's the reading we should give it? I don't think that's a fair reading of the statement. What the court said was absolutely, it is not based on that. It is my understanding of the Third Circuit, et cetera. Let's assume you're right on that, and I'm not sure that that's the right interpretation, but if you are, do we end up with a situation where the sentencing judge is essentially capped by the initial sentence? Yes. Without, unless you can show actual vindictiveness? Yes. Yes, in this setting. Unless the government, if the government had failed. But the judge misapplies the guidelines, and the judge can't come back and say, well, I made a mistake. Oh, the government had a right to appeal at that time. They didn't take a cross appeal. If there was an error in the original sentencing that caused the sentence to be too low in violation of the guidelines or something else, the government had every right to object, had every right to appeal, but once the government fails to appeal, that judgment becomes final, and that's the green law principle, and it interplays here with Pierce. Did you make that argument to the district court that, hey, this piece of the judgment is off the table? We appealed the sentence. We didn't appeal the judgment. The remand was based on a problem with the sentence, not with the judgment. Therefore, you don't get to relook at the fine because that wasn't separately appealed. Did that argument ever get made to Judge Tucker? Because if it did, I don't recall that in the record, and I'd like to know. That whole argument was not made. What I did was I cited the Pierce principle and articulated it in my sentencing memorandum as one of the principles of law that governs A-B sentencing. But I didn't anticipate one or another increase. And no objection was made at the time of sentencing, was it, Mr. Goldberg? Oh, yes. That you can't touch that fine because that was not appealed by the government in the previous iteration of this case going before the Third Circuit. No, I objected, but I did not make that argument until in the appeal briefs. That's right. All right. Does that put that argument off the table, or do we look at that as a plain error kind of thing? How should we treat this argument you're making to us now? The error is not subject to plain error review because I timely objected. The argument is a legal error. I understood your objection to be stated at the time and restated in the briefs, not, hey, Judge, you can't touch this because, as you just said before us just now, this was a matter sealed off from you because it's not at de novo sentencing. I understood your argument to be it's error because the reasons you gave do not support the increase and therefore the presumption of vindictiveness kicks in. I'm getting the feeling that this is a new and a quite different argument, and that's why I'm asking about it. Yes, it's a new argument. It's made in my reply brief. It's in response to the government newly making and articulating for the first time in their red brief the argument that the judge had erred. All the judge was doing was fixing an error in her own guideline application at the first sentencing. The government did not make that argument below. We didn't object to their making that argument on appeal. I answered it in the reply brief with the green law principle. We want to have some time for the application. Yes, absolutely. What we have here is a pure issue of law, which is the judge swearing the defendant for his allocution. This is a common error, which I see reading records for appeals where I haven't handled the sentencing, and it's rarely objected to. Sometimes it occurs where the defendant is sworn at the beginning of a sentencing, and it's not so clearly about the allocution. Perhaps it's to swear the defendant with respect to the question, have you read the pre-sentence report and do you have any objections, that kind of thing that happens in a dialogue at the beginning. But here we've squarely presented the question because the judge asked the defendant be sworn as he stood to give his allocution. I said, judge, that's not how it's done. She said, it is in my courtroom, and that's the pure objection. We say under Adams. Does harmless error apply here? Adams says it does not, that there's no required showing because it's so metaphysical an impact that the defendant's allocution is expected to have. You were asking for a blanket rule saying that the allocution should never be sworn. The allocution may not be sworn, and it may not be subject to cross-examination. That error didn't occur here, but I've seen that too. Well, there's two different aspects. Okay, and that's not presented on this case. No, I understand, but I can see the argument on cross-examination. Tell me again, and we understand the historical basis and the lack of clear case law on this and the fact that the rules don't say anything one way or the other. Tell me why, at least with respect to the swearing, it's a problem. Because the defendant is not giving testimony, which is subject to being challenged as perjury, and it creates the illusion, the psychological impact on the defendant, which is the intended and beneficial impact on a witness on the witness stand, that he could be challenged later by this prosecutor in a prosecution for perjury if he couldn't stand behind on a factual level everything that he says. It places that very caution on what he says and how he says it that the oath is intended to place, but which is inappropriate in this instance for an allocation. It's inappropriate to let the defendant know that the defendant ought to be truthful? No, that's not it. There's a policy problem with having the defendant be aware that in making representations to the court, he or she has to be speaking the truth. The representations that a defendant makes in allocation are mostly about feelings, fears. I mean, all of you have been trial judges before. You were appellate judges. You know how difficult that moment is. In other words, if that's true, things that could never be the subject of a perjury prosecution, right? That's true. You have to come forward with some evidence that you lied about your fears. So what's the seed of the problem that you see in Judge Tucker putting Mr. Ward under oath? Causing the defendant to be restrained and careful in a statement which is supposed to come from the heart and from the soul at that moment. And this is the historical feeling. This comes from the days when the defendant had no other opportunity, was incompetent to testify, was in most instances about to be sentenced to death. And we've carried that forward, and it's that kind of statement, and yet we've carried that forward into today's process. If that process is to be changed, a rule, as you suggested, should be proposed to make that fundamental change. Is your premise correct that that process continues to this day? You started by saying that it's frequent, and I dare say it probably is frequent. That defendants are sworn at their sentencing hearings, that that is a regular occurrence. The rule is silent on it, and the practice, wherever it has developed, what is the source of law to which you point to say that's a practice which is contrary to law? That this is a common law tradition carried forward in our sentencing, that it is considered to be for 400 or 500 years a fundamental human right, and that a general lack of appreciation for its historical foundations that unfortunately many people share is not a reason to revolutionize the process and change it. Well, if the defendant had said, oh, well, I feel I can't speak if I have to take an oath, that would be one thing, but here the defendant spoke, what, for 10 minutes, quite voluminously, and can you say that looking at it, he does not appear in any way to have been inhibited from saying what he wanted to say? That would be a prejudice analysis, and I rely on Adams and the related cases that say that there's no requirement to show in the particular case how it would have been different. But can Adams be distinguished? I mean, there the counsel was responding for the client, as I recall. Yes, I think Adams is one where the defendant wasn't invited to speak at all. That's correct. Isn't that a different situation? The Supreme Court, yeah. That was the Third Circuit case, but the Supreme Court cases, Green and Hill are like that as well. Yes, so there are three levels of it. There's not being invited to speak, there's the oath, and there's the cross-examination. Those are the things that you see. And in this case, it's the oath. Good. Well, we'll hear what the government has to say about this, and I'll have you back. Thank you. Good morning, Your Honors. May it please the Court, Bea Whitsleben for the United States. Let me jump right in and respond. I'll start with the allocution, since that's where we ended. Adams is very distinguishable. Let me just back up for a second, because my learned opponent conflates the right to allocute with the right to do so unsworn. And respectfully, as his argument just revealed, there is no basis for that. The rule doesn't require it, and the case law doesn't require it. Would you concede that, historically, it was an unsworn statement? Actually, I can't, Your Honor. I haven't researched that aspect of it. It's so venerable authority, as Black's Law Dictionary describes it, as an unsworn statement. That doesn't move the government at all? My historical experience was it was an unsworn statement in the District of Delaware. I will say that I do have Black's Law Dictionary, and I saw that in there, but I can't say how it was sourced, respectfully, Your Honor. And I will say this, the defendant also acknowledges that current practice, it is not uncommon, as a practice of the district judges in this district, to have the defendant sworn. And I'm going to come back to that if I get time, but may I just proceed with this idea? When the Supreme Court recognized the right to allocution in its most seminal case, it actually described for us what that allocution is and why it's important. And in particular, Judge Frankfurter, in his eloquent way,  in his own voice, even though he might have halting eloquence, he can certainly describe it, the nature and circumstances of the offense, the very things that make sentencing key when you adapt it to the defendant, which, as we know, is very important. So those aspects of it, the right to present evidence in your own voice, is what the Supreme Court was protecting in its case about allocution, and that was done here. Mr. Goldberger would say, no, that wasn't done here. I'll let him speak for himself, but I understand the argument from the other side to be, yeah, that's exactly what the Supreme Court said. And what they meant was, let the person stand up and have their say. And if you put them under oath, you are deliberately damping down their incentive and desire and capacity to speak because you put the fear of further criminal sanction before them, when you should be just listening. What's wrong with that argument? There's two things that are at least wrong with that argument, Your Honor. First of all, on the facts of this case, which has demonstrated and illustrates the difference between no allocution at all, not getting invited to speak, and not having the opportunity to speak, and having a full, unfettered opportunity to speak. No questions were asked. No limits were placed. Time or topic, there were no limits. This defendant spoke for almost as long as his lawyer did, ten and a half pages in the transcript, roughly ten minutes, if I'm not mistaken. So the defendant had a full and fair opportunity to speak in this second hearing. Mind you, he had a similar experience and made similar statements, similar length, in the first sentencing hearing and in the submissions he made to the court, which included a full two-page document. You're arguing harmless error. I am, Your Honor. But that's not the question that I think we're interested in. Why shouldn't there be a blanket rule that the defendant be unsworn here? Why doesn't it have a chilling effect? What policy is served by swearing the defendant in? The policies that are served by swearing the defendant in is, as the defense counsel identified, we swear witnesses for specific purposes. Defendants are sworn before they plead guilty. Everyone in the courtroom, if the defendant would have it, other than the defendant, has an obligation of candor to the court. That's a completely different circumstance, right? A plea of guilty is sworn because it is the determination of guilt, that an allocution, all that is past and behind you. Don't you see a dramatic difference between a plea of guilty and the allocution in which one is simply typically making a, you know, a be nice to me plea for mercy? I see a difference, Your Honor, but not a dramatic difference. And every member, the jurors are sworn, the marshals are sworn. The whole purpose of the oath is inconsistent, and this is where we get a difference, Your Honor, with respect to your question. But for what purpose? In Adams, the court held that there should be, when the defendant is denied entirely his right to allocute, that there should be a presumption that he was harmed because the district court, in imposing the sentence, was deprived of the opportunity to hear the defendant in his own words describe what happened. I agree that Adams is distinguishable. You don't have to convince me on that. But the oath gets to that for my purposes, for my argument, if you don't indulge me, Your Honor, because what the Adams court says is we need the presumption because it makes the sentencing proceeding less reliable if we don't have the defendant's allocution. Well, that's the point we're trying to get you to speak to. The defense is telling us swearing the defendant will have a chilling effect and you will not get the benefit of the unfettered commentary from the defendant, which has historically, in common law, been a benefit to a sentencing court. That's the essence, I take it, of the argument they're making. You're making arguments that it didn't hurt here, your harmless error argument, and maybe it wouldn't hurt some other defendant. But I think what we're trying to pull from you is a response, a direct response to the assertion that there's some class of defendants for whom the oath would be a barrier. And for those people, it's a detriment both to them and to the system not to get their unfettered commentary at the sentencing stage. What's the response the government has to that policy argument that's being made by the defense? That in those cases, the defendant should come forward and state for the benefit of the review of the record what he would have said but was afraid to say in fear of perjury. And may I point out that a defendant doesn't have to be... I had a problem with perjury because what is being said in the courtroom, whether you're sworn or not, can that not be the basis for a prosecution? The court just anticipated my very next phrase. Whether you're sworn or not, there is the opportunity for the government, in theory, to charge you with obstruction of justice for making materially false statements to the court. And in that line, this is the point that Judge Jordan so eloquently made in asking my opponent. If this defendant got a presumptive, and Judge Roth made the point as well, he could withhold those statements which he feared prosecution on, but defendants in mitigation, statements in mitigation and allocutions, are not typically giving, as we heard, factual statements. They are giving statements of why they did things, things that are within the purview of their own mind. And defense counsel cannot point to a single case, I couldn't find one, where someone was prosecuted for either perjury or obstruction for having made statements during their own allocution of the sentencing. But then why is it significant for the government that a person be sworn? It isn't per se important for the government that the person be sworn. Again, the court in this case has a practice of swearing the defendants, and we do not think by doing so this judge committed any error, or certainly any error from which prejudice must be presumed. We don't believe it's too much to ask that when a defendant has exercised his right to allocution, as the Supreme Court recognizes that right, that he then be required, if he claims that the administration of the oath prior to that was a harm to him, that he at least come forward with something that we could evaluate on what he would have said had he not been put under oath if he considers the oath onerous. I respectfully, if I might, if I've answered the court's questions, can I turn briefly to the issue of the... Well, let me hold you to this for just a moment, because doesn't that put you in a circumstance where harmless error swallows up all the analysis? Because what you're really saying is it will always be harmless, and if that's true, it can never be error, right? I don't agree that it will always be harmless, Your Honor. I mean, isn't there a risk that it will not be harmless? But if you say harmless error applies and the defendant goes ahead and talks, it'll probably be harmless. But if the defendant, as you said, can say, well, I would have said such and so if I hadn't been under oath, or if the defendant says, well, I'm scared to talk then, forget it, then it's not harmless. Is that a rule that you could live with? I'm sorry, I wasn't following, Your Honor. Skip it. I think we need to get on to... I apologize, Your Honor. What I find puzzling is that there's no definitive case law on this. Yes, in fact, the government hasn't been able to find this issue even raised previously, except by Mr. Goldberg and other cases. So if I can turn briefly to vindictiveness, I want to make sure I lift it up my table, but the record reflects that the prosecutor in the case, which happened to be me, said to the judge, of course, Your Honor, we would want the fine to be based on new evidence and not punitive to the defendant. And she said, absolutely, as Judge Shorten has pointed out, and then she went on to say it's not based on that, which is a reference to the alternatives I gave her of the new evidence or the punishment of the defendant. Moreover, it is clear from the case law that there is not a presumption of vindictiveness every time a sentencing court, which is the same sentencer, applies a higher sentence. Is there a problem here with the defense argument that the court should never have touched the sentence to begin with because the government didn't appeal, cross-appeal, the prior time this case was before us? Yes. What's the problem? Two problems spring to mind. First of all, the government's first opportunity to defend the district court's decision was in its red brief as called by my counsel. That was the first time we had an opportunity to defend the court's decision. So it's not a new issue in that sense. Secondly, the Green Law case limits what an appellate court can do. It says nothing about what the district court can do on remand. So it's really not applicable here. Green Law, as you know, the circuit court there imposed the mandatory minimum when the parties hadn't asked for it. And also, Green Law in no way limits what the government can do to defend a district court decision. In this case, it also bears noting, it's very important, the defendant asked for a full resentencing. At the outset of this hearing, the district judge said, I believe I'm here for a clarification of sentence. At which point, defense counsel said, we thought you were going to hold a full resentencing, and she said, very well. And we went forward. The defendant was on notice that the government was seeking a higher fine and a higher term of imprisonment based on the defendant's post-sentencing conduct. So there's no issues with notice there. Further, even if there were a presumption, it's very clear that was overcome in this case. Was there any objection made? Was there any conversation with the court about this ought not be a full resentencing? There are issues that are foreclosed? No, none. And in fact, the parties briefed it as if it was a full resentencing and then argued it as if it were. I'm unclear as to what the government's position is with respect to what Judge Tucker relied on. Are you saying that she did not rely on the new evidence while in prison? I think the word absolutely in the transcript suggests that she very well could have been relying on the new evidence that the government provided. Yet when she gave her reasons for the sentence, she didn't state that. That is correct, Your Honor. She did reference… It seemed pretty clear that she was relying on the prior evidence. Although she did reference, Your Honor, in her statement of reasons, his conduct post-sentencing in the sense of her ruling with respect to the Brazilian victim's children, which was only introduced at the second sentencing and she ordered that he not have contact with those children. So she clearly was taking that new evidence into account in giving her general statement. But I agree with Your Honor, when she then actually lists what she says, she does cite something which is both manifestly legitimate and objective and is something that didn't exist in the first hearing, which is the Court of Appeals' opinion in the first panel in this case. It is just like the situation in the Booker remands, if the Court will indulge me on that. The defendant asked for a full… He took to the Court of Appeals a challenge to her methodology in calculating the fine. And the Court of Appeals, in its opinion, agreed that she had committed error in that. When he comes back for resentencing, she is entitled to correct that error, is in fact expected to, especially when the defendant asks for a full resentencing. So I respectfully submit that even if there was a presumption of vindictiveness, it was more than able to overcome in this case by that. The district judge clearly illuminated what she did. She took the guidelines. She considered the 33 of 53 factors. There's no question that he had the ability to pay. She found that, and she found that it was within the guidelines of the new fine. I think I'm out of time, or maybe I am. Almost. Any other questions? No. Thank you. Thank you very much, Mr. Goldberger. Well, my friend, Ms. Witzleben, has actually put her finger on the other reason why prejudice has to be presumed from the allocution error when she says that we're supposed to make a record as to what the defendant would have said had he not been sworn. There's no point in the appellate process at which such a record could be made. The error is such that there will not be a record of that, and that's precisely the sort of error for which we presume prejudice and don't require prejudice to be shown. It's not like you would have a proffer. As a theoretical matter, why wouldn't that be the case? I mean, if it was really the case that a defendant said, look, I'm uncomfortable being sworn, there are things I'd like to say to you, but I've got these people over here who have already succeeded in sending me away for a number of years, and I'm worried that they're going to try to send me away for another number of years. But if I didn't have that threat hanging over my head, I have some things I'd like to describe to you, and before you put me under oath, I'd like to make a record of them. As a practical matter, it's true it doesn't happen now, but you've just said there's no point at which it could happen. Isn't there? Couldn't you do it just like that? Well, I've probably stood by about 100 people being sentenced over the last few decades, and I can't think of a single one who would have had the presence of mind and the wherewithal to make a statement like that or anything like what Your Honor just suggested. Most defendants are in a kind of fugue state. You've seen it. You've all seen it. When they're being sentenced, when they come out of the courtroom, they don't remember anything anyone has said. You have to tell them what the judge just said to them again. I never would a defendant be able to say anything like that. Yeah, no question it's a high-stress event for everybody and most particularly for the defendant, of course. But the fact that it hasn't happened is maybe just a function of our kind of plowing new ground here because, as Judge Serkis noted, there's a dearth of case law in this. If this were to become the law, is it really a practical impediment? You've posed a practical impediment and said there's just no point to do it. Is there really a practical impediment? It could be done, couldn't it? I'm not seeing a moment in which it could really be done in a convincing way that wouldn't be just, as the expression you used in the previous, massaging the record. I mean, for example, say during the 14-day period under Rule 35, afterwards file something to make a record of that. It would be, I don't think it would be genuine. If I could make one other point about whether green law principle applies to the district court on remand, I'm pretty sure that there are cases of this court saying that the law of the case in the district court on remand includes preclusion of issues that could have been but were not raised in a previous appeal. And I could provide that citation not off the top of my head but in a letter shortly after if you were at all concerned with that argument. Otherwise, I would simply, I don't know whether that would be helpful or not, but otherwise... No, by all means, you may submit it. All right. Otherwise, I would simply say that given the number of errors that we've developed in the brief, procedural and substantive, that we do ask for a remand and we ask you to consider whether, as I suggested in the brief, that remand ought not to be to a different judge after two previous sentencings. Thank you. Any other questions? No. The case was very well argued. We'll take the matter under advisement.